IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

TIMOTHY DOCKERY,
    PLAINTIFF

3: CV 11 1368

V.

CLASS ACTION
COMPLAINT NO. _____

N. WENTZEL, SECRETARY OF CORRECTIONS
KLOPTOSKY, DEPUTY SECRETARY OF CORRECTIONS
B. COLLINS, SUPERINTENDENT
A. KOVALCHIK, DEPUTY SUPERINTENDENT
S. KEPHART CORRECTIONS CLASSIFICATIONS PROGRAM MANAGER
L. LIGGITT, CHAPLAINCY PROGRAM DIRECTOR
J. MIRANDA, UNIT MANAGER

FILED
SCRANTON

JUL 22 2011

PER _____
  DEPUTY CLERK

I. JURISDICTION AND VENUE

1. THIS IS A CIVIL RIGHTS CLASS ACTION AUTHORIZED BY 42 U.S.C. SECTION 1983 TO REDRESS THE DEPRIVATIONS, UNDER THE COLOR OF STATE LAW SECURED BY THE CONSTITUTION OF THE UNITED STATES. THIS COURT HAS JURISDICTION UNDER U.S.C. SECTION 1331 AND 1343 (a)(3), AND RULE 23 OF THE FEDERAL RULES OF CIVIL PROCEDURES. PLAINTIFF SEEKS DECLATORY AND INJUNCTIVE RELIEF PURSUANT TO 28 U.S.C. SECTION 2201 AND 2202; 2283 AND 2284, AND RULE 65 OF THE FEDERAL RULES OF CIVIL PROCEDURES.

2. THE UNITED STATES DISTRICT COURT OF THE MIDDLE DISTRICT OF PENNSYLVANIA IS THE APPROPIATE VENUE UNDER 28 U.S.C. SECTION 1391(b)(2) BECAUSE IT IS WHERE THE EVENTS GIVEN RISE TO THE CLAIMS OCCURED.

1.

## II. PARTIES

3. Plaintiff Timothy Dockery, is and was, at all times relevant hereto, a prisoner in the custody of the Pennsylvania State Department of Corrections ("DOC"). At the time of the events relevant hereto Plaintiff Dockery was incarcerated at the State Correctional Institution Frackville, where he is currently incarcerated.

4. Defendant M. Wentzel, is the Secretary of Corrections of the of the State of Pennsylvania. He is legally responsible for the overall operation of the Department and each institution under its jurisdiction including SCI-Frackville, where Plaintiff is currently confined.

5. Defendant Kloptosky, is the Deputy Secretary of Corrections of the State of Pennsylvania. He is legally responsible for the overall operation of each State Correctional Institution under the Department jurisdiction in the Eastern Region including SCI-Frackville.

6. Defendant B. Collins, is the Superintendent of SCI-Frackville, and he is legally responsible for the operation and management of Frackville and its wards.

7. Defendant A. Kolvalchik, is the Deputy Superintendent of Centralized Services at Frackville, and he is responsible for the operation of all programs and services including the Secured Special Needs Unit (SSNU) program and all religious services at Frackville.

2.

8. Defendant S. Rephart, is the Corrections Classification Program Manager ("CCPM"), and he is responsible for the management of all programs and services at Frackville, the SSNU program and religious services.

9. Defendant J. Miranda, is the Unit Management of the SSNU program at SCI-Frackville, and she is responsible for the management of the inmates and operation of that unit.

10. Defendant L. Liggit, is the Chaplaincy Program Director, and he is responsible for the management of all religious services at SCI-Frackville.

11. Each defendant is sued individually and in his or her official compacity. At all times mentioned in this complaint each defendant acted under the color of state law.

12. Plaintiff on behalf of himself and all those similarly situated in the Department of Corrections Secured Special Needs Unit Program, all Level-5 (L-5) housing units and the prison general population.

13. Plaintiff has filed no other lawsuits dealing with the same facts involved in this action or otherwise relating to his imprisonment.

3.

## III. FACTS

14. PLAINTIFF WAS TRANSFERRED TO SCI-FRACKVILLE, (SECURED SPECIAL NEEDS UNIT (SSNU) PROGRAM APRIL 2009 AS A PHASE 5, CUSTODY LEVEL-5 ("L-5") INMATE. SINCE, HE HAS REQUESTED AND EXPRESSED HIS SINCERE CONCERNS TO PARTICIPATE IN THE JUMU'AH (FRIDAY) PRAYER (SERVICE AS REQUIRED ACCORDING TO THE TENETS OF ISLAM. HIS REQUEST WAS DENIED DUE TO HIS CUSTODY LEVEL-5 HOUSING (STATUS. HOWEVER, PLAINTIFF WAS INFORMED BY THE MANAGEMENT REVIEW TEAM ("MRT") THAT WHEN HE GET PROMOTED TO A PHASE 3 HIS REQUEST TO PARTICIPATE IN THE JUMU'AH (FRIDAY) PRAYER (SERVICE WOULD BE LOOK INTO.

15. AFTER PLAINTIFF ADVANCED TO A PHASE 3, HE AGAIN REQUESTED TO PARTICIPATE IN THE JUMU'AH (SERVICES AND WAS INFORMED BY THE (MRT) THAT PARTICIPATION WAS NOT AN OPTION WHILE IN THE L-5 UNIT. PLAINTIFF REMINDED THE (MRT) THAT BANNING L-5 INMATES ESPECIALLY INMATES IN THE SSNU PROGRAM PARTICIPATION IN THE JUMU'AH (SERVICE IS IN CONTRAST WITH DEPARTMENT POLICY 13.8.1 (ACCESS TO MENTAL HEALTH CARE PROCEDURES MANUAL SECTION 10-SSNU) WHICH (STATES IN THE (SSNU PRIVILEDGES AND (SERVICE CHART ATTACHMENT 10 A, PHASE 5 AND 4 INMATES ARE PERMITTED, CELL VISIT ONCE PER WEEK BY BY CHAPLAIN - PHASE 3 AND 2 INMATES, CELL VISIT WITH CHAPLAIN WEEKLY: ONE OUT OF CELL NON-DENOMINATIONAL RELIGIOUS (STUDY.

16. PLAINTIFF TAKEN INTO ACCOUNT THE ISSUE OF SECURITY THEN REQUESTED JUMU'AH SERVICE TO BE BROADCAST EVERY FRIDAY AFTERNOON VIA CLOSED CIRCUIT TELEVISION. THIS REQUEST DENIED. PLAINTIFF SPOKE WITH L. LIGGIT, DIRECTOR PROGRAM CHAPLAIN CONCERNING HIS REQUEST AND P. DAMITER, SUPERINTENDENT ASSISTANT/ GRIEVANCE COORDINATOR WHO INFORMED HIM THAT THE GRIEVANCE HE'D FILED WOULD BE DENIED BECAUSE THE DOC DID NOT HAVE THE MONEY TO BROADCAST CLOSED CIRCUIT.

17. PLAINTIFF POINTED OUT THAT THIS WOULD BE THE LEAST RESTRICTIVE MEANS IN FURTHERING THE DOC COMPELLING INTEREST. WHICH IN PART IS TO HELP REHABILITATE PRISONERS AND PROMOTE GOOD ORDER. MOREOVER WOULD NOT INTERFERE WITH THE SECURITY OR OPERATION OF THE PRISON ESPECIALLY SINCE INMATES HOUSED IN THE SSNU PROGRAM ARE PERMITTED "OUT OF CELL RELIGIOUS STUDIES" AND TWO (2) HOUR TELEVISION PRIVILEDGES DAILY AND FOUR (4) HOURS EACH WEEKEND DAY AND ARE ALSO PERMITTED TO MINGLE ONCE PROMOTED TO PHASE 3 AND 2. ALL TO NO AVAIL.

18. ON AUGUST 31, 2010, PLAINTIFF FILED GRIEVANCE NO. 333150, WHICH CONSEQUENTLY DETERMINED THAT THE ISSUE WAS NOT GRIEVABLE AT THAT TIME AND SHOULD BE SUBMITTED TO THE RELIGIOUS ACCOMODATION COMMITTEE (RAC) VIA DC-52 (INMATE REQUEST FOR RELIGIOUS ACCOMODATION). PLAINTIFF NEVER RECEIVED AN ANSWER FROM "RAC".

ON OCTOBER 16, 2010, PLAINTIFF RESUBMITTED GRIEVANCE NO. 339536 REGARDING HIS DENIAL TO PARTICIPATE IN THE JUMU'AH PRAYER SERVICE AND/OR PARTICIPATE VIA CLOSED CIRCUIT TV. ON NOVEMBER 3, 2010, MR. KEPHART (CCPM) DENIED HIS REQUEST CLAIMING THAT GRIEVANCE WAS UNFOUNDED AND WITHOUT MERIT. PLAINTIFF APPEAL TO THE NEXT LEVEL i.e. SUPERINTENDENT AND FINAL APPEAL TO THE CHIEF GRIEVANCE COORDINATOR WHICH CONSEQUENTLY WAS UPHELD. ON FINAL APPEAL PLAINTIFF WAS INFORMED THAT FOR SECURITY REASON, RELIGIOUS SERVICE FOR L-5 UNIT INMATES TAKE PLACE AT THEIR CELLS THROUGH ROUNDS CONDUCTED BY THE FACILITY AND CONTRACT CHAPLAINS.

19. PLAINTIFF CONTEND THAT THE DECISION ON FINAL APPEAL CONTRADICTS DEPARTMENT POLICY 13.8.1 WHICH STATES, PHASE 3-2 INMATES ARE PERMITTED CELL VISIT WITH CHAPLAIN WEEKLY: ONE OUT OF CELL NON-DENOMINATIONAL RELIGIOUS STUDY. PLAINTIFF ALSO CONTEND THAT THE FACT THAT A FACILITY CHAPLAIN "BY THE WAY IS NON-MUSLIM" VISITS THE SSNU INMATES WEEKLY, THIS STILL DOES NOT SATISFY THE REQUIREMENTS OF THE CONSTITUTION NOR DOES IT MEET THE NEEDS OF THE MUSLIM INMATES HOUSED IN L-5 UNITS, AS WOULD AN ISLAMIC CHAPLAIN.

20. THE FACILITY CHAPLAIN AND CONTRACT CHAPLAINS WHICH CONSIST MOSTLY OF CHRISTIAN CHAPLAINS, ONE JEWISH AND NATIVE AMERICAN CHAPLAIN DO NOT AND CANNOT TEACH MUSLIMS ABOUT THE TENETS OF THEIR RELIGION FOR TO DO SO WOULD BE IN OPPOSITION OF THEIR FAITH

AND BELIEFS. THEREFORE WHEN MUSLIM INMATES ARE GRIEVING THE DEATH OF FAMILY AND LOVEONES OR NEED ADVICE AND COUNSELING REGARDING MARRIAGE, DIVORCE, DEATH ET CETERA THESE VERY IMPORTANT TENETS OF THE RELIGION, AND NEEDS OF THE MUSLIM ARE NOT BEING MET BY THE WEEKLY VISITS OF A NON-MUSLIM FACILITY OR CONTRACTED CHAPLAINS. UNLIKE THE CHRISTIAN, JEWISH AND NATIVE AMERICAN INMATES WHO ARE VISITED BY CHAPLAINS OF THEIR FAITH AND COUNSELED AND TAUGHT THE TENETS OF THEIR FAITH.

21. PLAINTIFF WAS INFORMED BY L. LIGGIT, CHAPLAINCY PROGRAM DIRECTOR THAT HE IS UNABLE TO FIND A SUITABLE ISLAMIC CHAPLAIN FOR SECURITY CLEARANCE TO CONTRACT FOR THE MUSLIM INMATE POPULATION HERE/AT SCI-FRACKVILLE. PLAINTIFF CONTEND THAT FAILURE TO HIRE/ CONTRACT AN ISLAMIC CHAPLAIN FOR SECURITY CLEARANCE IS A STATE WIDE SYSTEMATIC DISCRIMINATORY PRACTICE EMPLOYED BY THE DOC NOT TO HIRE AND/OR CONTRACT ISLAMIC CHAPLAINS. MOREOVER IS INEXCUSABLE SINCE THE DOC HAS EMPLOYED OTHER METHODS TO MEET THE REQUIREMENT AND/OR TO SERVICE THE INMATES RELIGIOUS NEEDS WHO ARE HOUSED IN FACILITIES THAT DOES NOT HAVE A FACILITY ISLAMIC CHAPLAIN OR CONTRACTED ISLAMIC CHAPLAIN. FOR AN EXAMPLE, THE PRACTICE BY THE DOC HAS BEEN TO PERMIT THE CONTRACT CHAPLAINS i.e. (MUSLIM, JEW ETC.) TO SERVICE THE SURROUNDING DOC FACILITIES THAT DOESN'T HAVE A HIRED FACILITY CHAPLAIN OF MUSLIM, JEWISH OR NATIVE AMERICAN ORIGIN.

ALTHOUGH THIS PRACTICE HAS BEEN DISCONTINUED FOR THE ISLAMIC CHAPLAINS CONTRACTED BY THE DOC, IT IS NEVERTHELESS WIDELY PRACTICED BY THE DOC FOR CONTRACTED JEWISH CHAPLAINS TO VISIT INMATES AT SURROUNDING DOC FACILITES. THUS, THE UNEQUAL TREATMENT VIOLATES THE EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT.

22. PLAINTIFF AVERS THAT HE AND ALL MUSLIMS ARE OBLIGATED ACCORDING TO THE TENETS OF ISLAM TO PARTICIPATE IN THE JUMU'AH SERVICE EVERY FRIDAY AFTERNOON, AND THAT PRISON OFFICIALS BAN ON PARTICIPATION VIOLATES HIS AND OTHER MUSLIMS WHO ARE SIMILARY SITUATED FIRST AND FOURTEENTH AMENDMENTS, AND THE RELIGIOUS LAND USE AND INSTITUTIONALIZE PERSONS ACT (RLUIPA), AND LAWS OF PENNSYLVANIA.

23. ON SEPTEMBER 24, 2010, PLAINTIFF SUBMITTED TO CORRECTIONAL OFFICER COMISAC, A DC-52 (INMATE RELIGIOUS ACCOMODATION REQUEST FORM), REQUESTING TO BE PROVIDED WITH A RELIGIOUS DIET ACCORDING TO THE TENETS OF HIS RELIGION (ISLAM) WHICH MANDATES MUSLIMS TO EAT OF THE (HALAL) LAWFUL FOODS PERMITTED BY ALLAH. AFTER RECEIVING NO REPLY TO MY REQUEST I SPOKE WITH CHAPLAIN LIGGIT ABOUT MY REQUEST FOR RELIGIOUS DIET HE CLAIMED THAT HE NEVER RECEIVED MY DC-52 FORM.

8.

24. On February 25, 2011, plaintiff was again instructed by Chaplain Liggit to submit another DC-52 form requesting a Halal (lawful) religious diet in accordance with his religion (Islam). Which states:

> "Forbidden to you are Al-Maytata (the dead animal, cattle-beast not slaughtered), blood, the flesh of swine, and the meat of that which has been slaughtered as a sacrafice for others than Allah, or has been slaughtered for idols etc... or on which Allah's name has not been mentioned while slaughtering, and that which has been killed by strangling, or by a violent blow, or by a headlong fall, or by the goring of horns - and that which has been (partly) eaten by a wild animal - unless you are able to slaughter it (before it's dead) - and that which is sacraficed (slaughtered) on "An-Nusub" (stone altars). Forbidden also are the use of arrows seeking luck or decision. All that is Fisquan (sin, disobedience to Allah). This day those who disbelieve have given up all hope of your religion, so fear them not, but fear me. This day I have perfected your religion for you, and have chosen for you Islam as your religion. But as for him who is forced by severe hunger with no inclination to sin (such can eat the above mentioned meats). Then surely Allah is Oft-Forgiving, Most Merciful. Noble Qur'an, 6:5, A. 3. See also Sahih Al-Bukharie, vol. 7, Hadith No. 407.

It is worth noting that Congress in deciding the RLUIPA has identified that prison officials refusal to provide inmates with a religious diet is an "egregious and unnecessary" restriction on an inmates religious liberty.
As of this submission plaintiff has received no reply concerning his request for religious diet for "RAC" or Chaplain Liggit.

25. Plaintiff contends that his placement in the SSNU program and others similarly situated are unlawful and violates his federal rights due to the program not being license to operate and administer psychiatric and psychological treatment to inmates especially long term. The program now in operation is not in compliance with the 13.8.1 (Access to Mental Health Care Section 10, Pro-

CEDURES MANUAL FOR THE SECURED SPECIAL NEEDS UNIT (SSNU). FUNDS ALLOCATED FOR THE PROGRAM ARE NOT USED FOR THE TREATMENT OF INMATES IN THE SSNU AND/OR ARE MISAPPROPRIATED.

26. PLAINTIFF WAS NEITHER COURT ORDERED NOR CONSENTED TO PLACEMENT IN THE SSNU PROGRAM. MOREOVER PRISON OFFICIALS VIOLATED HIS DUE PROCESS WHEN THEY PLACED HIM AND OTHERS SIMILARLY SITUATED IN THE SSNU PROGRAM ▓▓▓▓▓▓▓▓▓ WITHOUT AFFORDING THEM THE FULL PANOPLY OF A ADMINISTRATIVE HEARING IN ACCORDANCE WITH ADMINISTRATIVE DIRECTIVE DC-ADM 801, 802.

27. PLAINTIFF AVER THAT UNDER THE UNITED STATES CONSTITUTION CONTRACT LAW (COMMERCE CLAUSE) GOVERNING THE UNIFORM COMMERCIAL CODE (U.C.C.) THE PENNSYLVANIA DEPARTMENT OF CORRECTIONS HAS NO LAWFUL CONTRACT TO BIND HIM IN THE SSNU PROGRAM WITHOUT HIS CONSENT. IN ADDITION TO THIS UNDER THE PENNSYLVANIA CODE S100.53. BILL OF RIGHTS OF PATIENTS, PLAINTIFF'S RIGHTS HAS BEEN VIOLATED.

PLAINTIFF SEEK COMPENSATORY DAMAGES IN THE AMOUNT OF $150,000.00 AND PUNITIVE DAMAGES $1,000,000.00.

I DECLARE UNDER THE PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.

DATED: 6/7/11

/s/ _____
TIMOTHY DOCKERY
111 ALTAMONT BLVD.
FRACKVILLE, PA. 17931

SWORN AND SUBSCRIBED BEFORE ME THIS

7th DAY OF June 20 11.

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Jean M. Bahner, Notary Public
West Mahanoy Twp., Schuylkill County
My Commission Expires Jan. 28, 2015
MEMBER, PENNSYLVANIA ASSOCIATION OF NOTARIES

10.

Jean M. Bahner

RECEIVED
SCRANTON

JUL 22 2011

MARY E. D'ANDREA, CLERK
Per_____ DEPUTY CLERK

CLERK'S OFFICE
UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA
P.O. BOX 1148, 235 WASHINGTON AVE.
SCRANTON, PA. 18501